UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| JOSEPH FIELDS, III, | ) | Civ. 09-4146-KES |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | ORDER GRANTING |
| DOUGLAS L. WEBER, individually | ) | DEFENDANTS' MOTION |
| and in his official capacity as | ) | FOR SUMMARY JUDGMENT |
| Warden, South Dakota State | ) | AND DENYING PLAINTIFF'S |
| Penitentiary; DARYL SLYKHUIS, | ) | MOTION FOR |
| individually and in his official | ) | SUMMARY JUDGMENT |
| capacity as Deputy Warden, South | ) | |
| Dakota State Penitentiary, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, Joseph Fields, III, filed this pro se suit under 42 U.S.C. § 1983 against defendants, Douglas L. Weber, Warden, and Daryl Slykhuis, Deputy Warden, of the South Dakota State Penitentiary (SDSP). Fields and defendants both move for summary judgment. Both oppose the other's motion for summary judgment. For the reasons stated below, defendants' motion for summary judgment is granted and Fields's motion is denied.

**FACTUAL BACKGROUND**

Both parties have submitted Statements of Undisputed Facts in support of their respective motions for summary judgment. *See* Docket 53, 63. Defendants also responded to Fields's statement of facts. Docket 65. The following facts are not disputed.

Fields is incarcerated at the SDSP in Sioux Falls, South Dakota. Docket 63, ¶ 1.[1] He is an enrolled member of the Omaha Tribe of Nebraska, which is a federally recognized Indian tribe. *Id.* at ¶ 2. Weber and Slykhuis are employed by the South Dakota Department of Corrections (DOC), as Warden and Deputy Warden of the SDSP. *Id.* at ¶¶ 5-6.

Inmate mail at the penitentiary is categorized as either packages or other correspondence. *Id.* at ¶ 10. The two types of mail are separately reviewed by security staff to ensure that contraband does not enter the penitentiary. *Id.* at ¶ 10-11. Under both DOC and SDSP policy, pornography is classified as contraband. Due to the volume of mail received at the penitentiary, staff do not look at every page of every book, magazine, or catalog. Docket 53, ¶ 13. If a member of the security staff is unsure of whether an item would be considered pornographic, Slykhuis is consulted. *Id.* at ¶ 15. If multiple publications are involved, Slykhuis may receive a list, which does have the inmate's name and number on it, but generally he only examines the publication, with no indication as to which inmate received it. *Id.* Under policy, the staff members reviewing inmate mail do not consider which inmate is the recipient. *Id.* at ¶ 17. It is possible that pornographic

---

[1] The facts that are cited from Fields's Statement of Material Facts (Docket 63) are admitted in defendants' reply. *See* Docket 65. Fields filed no response to defendants' Statement of Undisputed Facts (Docket 53). Accordingly, the facts he does not controvert in his Statement of Material Facts are deemed admitted pursuant to D.S.D. Civ. LR 56.1(D).

material may slip through the mail system and later be confiscated by penitentiary staff. *Id.* at ¶ 16.

The DOC pornography policy defines pornographic material as "books, pamphlets, magazines, periodicals, or any other publication or material that features nudity or sexually-explicit conduct. Pornographic materials may also include books, pamphlets, magazines, periodicals, or other publications or material that features or includes photographs, drawings, or other graphic depictions of nudity or sexually explicit material." Docket 55, Affidavit of Daryl Slykhuis, Exhibit 1. Under the same policy, nudity is defined as "a pictorial or other graphic depiction where male or female genitalia or female breasts are exposed." *Id.* The pornography policy contains an exception for "[p]ublished material containing nudity illustrative of medical, educational or anthropological content[.]" *Id.*

Fields challenges the application of this exception, asserting he was denied books that other inmates were permitted to receive through the SDSP system because he is Native American. Specifically, he alleges that inmate James Smith was permitted to receive Drawing for Beginners by Franciso A. Server, inmate Drew King received Fantasy Art Workshop by John Howe, inmate Michael Smith received Bud's Art Books, Issue No. 802P, and inmate Daniel Bolls received Bud's Art Catalog, Issue No. 907F. Docket 53, ¶ 28. Defendants dispute this allegation. First, defendants note that Fields's mailroom rejection notices do not indicate that Fields has ever been denied

3

Drawing for Beginners. *Id.* at ¶ 32. Defendants admit that King's file does contain mailroom rejection notices that indicate he has been denied books or other correspondence pursuant to the DOC pornography policy. *Id.* at ¶ 34. The transaction ledger for King's trust account shows that he did not order or purchase Fantasy Art Workshop through the inmate banking system. *Id.* at ¶ 35.[2] Fields was denied Fantasy Art Workshop because it depicted nudity or encouraged sexual behavior. *Id.* at ¶ 36. There is no indication that the item from Bud's Art that Smith received is the same issue that Fields was denied. *Id.* at ¶ 42. Penitentiary records also indicate that Bolls did not purchase Bud's Art Catalog through the inmate system and that he was denied books or other correspondence according to the DOC pornography policy. *Id.* at ¶ 45.

Fields appealed the denial of his books using the internal administrative remedy process. The DOC has implemented a two-step process for inmate complaints concerning the application of any policy, directive, rule, or procedure. First, the inmate must file an informal resolution request within thirty days of the action forming the basis of the grievance. *Id.* at ¶ 24. If the issue is not resolved informally, the inmate must file a request for an administrative remedy within five days of the informal

---

[2]An inmate cannot directly issue checks or spend money in his trust account, but rather must request payment be made by the DOC out of his account. Docket 54, Affidavit of Tim Symes, ¶ 2. The DOC maintains transaction ledgers for each inmate account, indicating when and to whom checks are issued. *Id.*

4

resolution request response. *Id.* Weber reviews the inmates' requests for administrative remedy and provides responses to them. *Id.* Weber responded to Fields's request for administrative remedies relating to the denial of his books pursuant to the pornography policy. *Id.* at ¶ 25.

Fields challenges the application of the pornography policy to him, arguing it deprived him of the equal protection of the laws, violating the Fourteenth Amendment. He also challenges both the DOC pornography and administrative remedy policies, asserting they were illegally promulgated, and as such, violate his due process rights. He seeks both damages and injunctive relief.

## STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Only disputes over facts that might affect the outcome of the case under the governing substantive law will properly preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not appropriate if a dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The nonmoving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts in the record. *Vette Co. v. Aetna Cas. & Sur. Co.*, 612 F.2d 1076, 1077 (8th Cir. 1980). The nonmoving party may not, however, merely rest upon allegations or denials in its pleadings, but must set forth specific facts by affidavits or otherwise show that a genuine issue exists. *Forrest v. Kraft Foods, Inc.*, 285 F.3d 688, 691 (8th Cir. 2002).

Rule 56 of the Federal Rules of Civil Procedure applies to prisoner litigants, despite the liberal construction afforded to their pro se pleadings. *Quam v. Minnehaha County Jail*, 821 F.2d 522 (8th Cir. 1987). The district court is not required to "plumb the record in order to find a genuine issue of material fact." *Barge v. Anheuser Busch, Inc.*, 87 F.3d 256, 260 (8th Cir. 1996).

### DISCUSSION

**I. Defendants are entitled to summary judgment on the merits of the equal protection claim.**

Fields argues that he was deprived of the equal protection of the laws under the Fourteenth Amendment when he was denied books under the DOC pornography policy. He argues that four white inmates were permitted

6

to have the same publications that he was denied. Defendants concede that Fields, as a member of the Omaha Tribe of Nebraska, is a member of a suspect class. To establish an equal protection claim, Fields must prove that (1) he was treated differently than a similarly situated class of inmates; and (2) that the differing treatment bears no rational relation to any legitimate penal interest. *Phillips v. Norris*, 320 F.3d 844, 848 (8th Cir. 2003). Furthermore, Fields must also prove purposeful discrimination. *Id.* (citing *Klinger v. Dept. of Corr.,* 31 F.3d 727, 733 (8th Cir. 1994), *cert. denied*, 513 U.S. 1185 (1995)). Fields has not met this burden.

Fields has not come forward with any evidence that the pornography policy was applied with a discriminatory intent. A facially neutral policy, such as the Department of Corrections pornography policy, that is alleged to have disproportionately impacted a suspect class, is "unconstitutional under the Equal Protection Clause only if that impact can be traced to a discriminatory purpose." *Keevan v. Smith*, 100 F.3d 644, 650 (8th Cir. 1996). "[A] discriminatory purpose is not presumed." *Snowden v. Hughes*, 321 U.S. 1, 8 (1944). Rather, to show discriminatory purpose a plaintiff generally must use "extrinsic evidence showing a discriminatory design to favor one individual or class over another." *Id.* "[C]ourts have consistently required equal protection plaintiffs to allege and prove something more than different treatment by government officials." *Batra v. Bd. of Regents of Univ. of Neb.,* 79 F.3d 717, 721 (8th Cir. 1996). Fields does not state any facts establishing

7

that the pornography policy has an adverse effect upon Native Americans or that such an effect is caused by invidious discrimination. The DOC pornography policy is facially neutral and penitentiary staff do not consider the identity of the inmate recipient. When an item is presented to Deputy Warden Slykhuis for a final determination, he generally sees only the item and its content. The record does not support Fields's contention that Caucasian inmates are treated more favorably under the policy.

Fields has submitted evidence of four incidents where Caucasian inmates were allegedly treated differently under the policy. This evidence is insufficient, particularly when the volume of mail received at the SDSP is considered. In *Weiler v. Purkett,* 137 F.3d 1047 (8th Cir. 1998), an inmate challenged the application of a facially neutral prison regulation that allowed the receipt of packages only from attorneys and judges. Weiler, who was African-American, was denied a package marked as legal from his son, who was not an attorney or a judge. *Id.* at 1049. Weiler filed suit under § 1983, claiming that other inmates received legal papers mailed by relatives and friends. *Id.* In support of his claim, he submitted affidavits from ten inmates asserting they had received such mail. *Id.* at 1050. The Eighth Circuit rejected his equal protection claim, noting "[a] few individual examples of unequal treatment are 'insufficient to provide more than minimal support of an inference of classwide purposeful discrimination." *Id.* at 1052 (citing *Inmates of Neb. Penal and Correctional Complex v. Greenholtz,* 567 F.2d 1368,

8

1381 (8th Cir. 1977)). Like Weiler, Fields has only provided a few individual examples of purportedly unequal treatment.

There is also a race-neutral explanation for the four inmates' alleged receipt of pornographic items. *See Keevan*, 100 F.3d at 650 (an adverse impact of a facially neutral policy may be explained by a neutral ground). Here, the documented evidence demonstrates that no inmates have knowingly been allowed pornographic materials. Rather, both Native American and Caucasian inmates have been denied books, magazines, or catalogs pursuant to the DOC pornography policy. Despite the continued efforts of staff, however, some inmates, including Fields, have circumvented the system and obtained pornography. Due to the high volume of mail the penitentiary receives, some pornographic material inevitably slips through.

For the above reasons, Fields's equal protection claim fails. Accordingly, defendants are entitled to summary judgment on the merits of this claim.

## II. Defendants are entitled to summary judgment on the merits of the federal and state due process claims.

Fields argues that the South Dakota Legislature's delegation of rulemaking authority to the DOC violates the South Dakota Constitution. He asserts that the DOC administrative remedies and pornography policies are consequently void. Fields argues this violates his due process rights. Because Fields is pro se, this court construes this claim as an argument that

9

his rights to due process under both the South Dakota Constitution and United States Constitution were violated.

### A. Federal Due Process Claim

Fields has not alleged a violation of a federal right, as required to state a claim under § 1983. Fields challenges the delegation of rulemaking authority by a state legislature to a state agency. "[N]ot every violation of a state law does double duty as a constitutional violation." *Ebmeier v. Stump*, 70 F.3d 1012, 1013 (8th Cir. 1995). "How power shall be distributed by a state among its governmental organs is commonly, if not always, a question for the state itself." *Highland Farms Dairy v. Agnew*, 300 U.S. 608, 612 (1937) (holding a claim that the Virginia legislature unlawfully delegated discretionary power to the Virginia milk commission was not cognizable under the United States Constitution). Fields's argument that the South Dakota legislature illegally delegated rulemaking authority does not establish the violation of a federal right. Accordingly, defendants are entitled to summary judgment on Fields's federal due process claim.

### B. State Due Process Claim

This court has jurisdiction over Fields's state-law due process claim pursuant to 28 U.S.C. § 1367(a). "The district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." *Id.* In

this case, the federal and state claims "derive from a common nucleus of operative fact," so exercising supplemental jurisdiction is appropriate. *McRaven v. Sanders*, 577 F.3d 974, 984 (8th Cir. 2009) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)).

The South Dakota Constitution provides that state penal institutions will be governed under rules and restrictions provided by the Legislature. Art. XIV, §§ 1-2. Despite this proclamation, the South Dakota legislature may delegate rulemaking authority to an agency. *See Boever v. South Dakota Bd. of Accountancy*, 1997 SD 34, ¶ 10, 561 N.W.2d 309, 312 (holding even though the state constitution mandates that "[t]hat the legislative power of the State shall be vested in a Legislature," the legislature properly delegated authority to the Board of Accountancy). A legislative delegation of rulemaking authority is permissible when accompanied by "(1) a clearly expressed legislative will to delegate power, and (2) a sufficient guide or standard to guide the agency." *Id.*

Defendants argue that the South Dakota legislature's delegation of authority to the DOC was proper. They assert that SDCL 1-15-1.2 clearly expresses a will to delegate power and that SDCL 1-15-20 provides a standard to guide the DOC. SDCL 1-15-1.2 creates the DOC. Under SDCL 1-15-20, the DOC may promulgate rules dealing with enumerated topics, such as inmate accounts. *Id.* ("The Department of Corrections at any time may promulgate rules, pursuant to chapter 1-26 . . .) Conversely, the legislature

gave the DOC authority to enact *policies and procedures* regarding management of the institutions, including inmate disciplinary matters. *Id.* ("The department may prescribe departmental policies and procedures for the management of its institutions and agencies, including inmate disciplinary matters.")

Fields argues that under SDCL 1-26A-2 the Administrative Rules of South Dakota should apply, rather than the DOC policies. SDCL 1-26A-2 provides in relevant part: "The compilation known as the Administrative Rules of South Dakota . . . are the official rules of all state executive agencies other than the Department of Social Services. Rules other than the rules of the Department of Social Services are invalid[.]" Fields also cites Article XIV, section 2 of the South Dakota Constitution which provides that state penal institutions will be governed under rules and restrictions provided by the legislature. According to Fields, the DOC administrative remedies and pornography policies are void because they are not categorized as rules.

In *Clay v. Weber*, 2007 SD 45, ¶ 4, 733 N.W.2d 278, 281, the South Dakota Supreme Court rejected Fields's argument. Three inmates challenged a variety of DOC policies under the theory that DOC policies are invalid under Article XIV, section 2 of the South Dakota Constitution, because they have not been adopted as administrative rules. The court found that SDCL 1-15-20 authorized the creation of DOC policies relating to inmate discipline. *Id.* at ¶ 12, 283-84. Thus, in that case, as well as here, the administrators of

12

the South Dakota State Penitentiary and DOC were "authorized to act by policy rather than rule in this area." *Id.* The South Dakota Supreme Court's conclusion that the use of policies rather than rules by the DOC does not violate the South Dakota Constitution is controlling. *See Highlands Dairy Farm*, 300 U.S. at 613 ("A judgment by the highest court of a state as to the meaning and effect of its own Constitution is decisive and controlling everywhere."). Accordingly, defendants are entitled to summary judgment on the merits of Fields's state due process claim.

## CONCLUSION

Defendants' motion for summary judgment is granted and Field's motion for summary judgment is denied. Accordingly, it is ordered

ORDERED that defendants' motion for summary judgment (Docket 51) is granted.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment (Docket 62) is denied.

IT IS FURTHER ORDERED that plaintiff's motion for temporary restraining order (Docket 71) is denied as moot.

Dated October 20, 2010.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE